IN THE CIRCUIT COURT OF TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

FILED
NOV 10 2005
CIRCUIT COURT CLERK
D.C.

Laura LaScola, Individually, and on
Behalf of Norma Dale Massa, as
Conservator and Next of Kin,

    Plaintiff(s),

vs.                                                                                  No. CT-003203-05

Laura Glasper-Gaston, Individually, and as an
Agent of Diocese of Memphis Housing Corporation
d/b/a St. Peter Manor, Caran Brown, Individually, and as an
Agent of Diocese of Memphis Housing Corporation
d/b/a St. Peter Manor, Mike Chiozza, Individually, and as an
Agent of Diocese of Memphis Housing Corporation
d/b/a St. Peter Manor, Teresa Schuman, Individually, and as an
Agent of Diocese of Memphis Housing Corporation
d/b/a St. Peter Manor , the Diocese of Memphis Housing
Corporation d/b/a St. Peter Manor and the Associated
Catholic Charities of the Diocese of Memphis In Tennessee, Inc.,

    Defendant(s).

## AMENDED COMPLAINT

Comes Now Plaintiffs, Laura LaScola, individually and as conservator and next of kin to Norma Massa, and hereby amends their Complaint in this cause of action as follows:

### I. PARTIES

1. Plaintiff, Norma Dale Massa, is a neurologically impaired adult resident of St. Peter Manor in Memphis, Shelby County, Tennessee.

2. Plaintiff, Laura LaScola, is an adult resident of Germantown, Shelby County, Tennessee and has been at all pertinent times herein. Laura LaScola is the daughter, next of kin and conservator of Plaintiff, Norma Massa.

EXHIBIT
C

3. Defendant, Diocese of Memphis Housing Corporation (hereinafter "DMH") is a non-profit corporation, licensed to do business in Tennessee. Its corporate office is located at 1325 Jefferson Avenue, Memphis, Tennessee, 38104. Its registered agent for service of process is Craig T. Hofer.

4. St. Peter Manor (hereinafter "St. Peter" or by name), is a retirement home owned and operated by Defendant, DMH. It is one (1) of five (5) entities that make up St. Peter Village. Its address is 108 North Auburndale, Memphis, Tennessee, 38104.

5. Defendant, Laura Glasper-Gaston, is an employee of Defendants, DMH and/or St. Peter. She is currently a resident of West Memphis, Arkansas.

6. Defendant, Caran Brown, is the former manager of Defendants, DMH and/or St. Peter. She is currently a resident Tupelo, Mississippi.

7. Defendant, Mike Chiozza, is the manager of Defendants, DMH and/or St. Peter. He is believed to be a resident of Memphis, Tennessee.

8. Defendant, Teresa Schuman, is the manager of Defendants, DMH and/or St. Peter. She is believed to be a resident of Memphis, Tennessee.

## II. JURISDICTION AND VENUE

9. This is an action in tort and in contract, arising out of and relating to the violation of the duty of care owed to Plaintiffs when, Plaintiff, Norma Massa, a neurologically impaired resident of St. Peter, disappeared while in the care and custody of Defendants from Fitzgerald's Casino-Tunica, Mississippi, on or about December 13, 2004.

10. This action is also brought, pursuant to T.C.A. § 76-1-101 et seq., for the abuse and neglect of Plaintiff, Norma Massa, while she was in the care and custody of Defendants as stated

above on December 13, 2004.

11. At this time, all parties are believed to be residents of Memphis, Shelby County, Tennessee with the exception of Defendant Glasper-Gaston, who resides in Arkansas and Caran Brown, who resides in Tupelo, Mississppi.

## II. STATEMENT OF THE FACTS

12. St. Peter Manor is a retirement home located in St. Peter Village in Memphis, Tennessee. Plaintiff, Norma Massa, who suffers from memory loss brought about by a series of small cerebral vascular accidents, was a resident at St. Peter at all times pertinent hereto.

13. On or about December 26, 2000, Plaintiff, Norma Massa, signed a lease agreement with Defendant DMH, and thereby became a resident of St. Peter Manor.

14. At or about the time Plaintiff Massa became a resident, the personnel of St. Peter Manor knew of her memory loss and history of cerebral vascular accidents (hereinafter "CVA").

15. Defendants, knew or should have known, that Plaintiff Massa's medical condition was deteriorating from the time she entered St. Peter Manor as a resident until her disappearance on December 13, 2004.

16. On or about September 28, 2004, Defendant, St. Peter Manor scheduled a trip for its residents to the Mid-South Fair located at the fairgrounds between East Parkway South and Central Avenue in Memphis, Tennessee. Plaintiff, Norma Massa, in a state of confusion, wandered away from other residents of St. Peter Manor and, subsequently, from the fair itself. The Memphis Police were notified of her disappearance. Six or seven hours later, Mrs. Massa turned up approximately seven (7) miles away at a residence near Sam Cooper Boulevard and

White Station Road, lost and disoriented.

17. Numerous residents of St. Peter and employees and agents of the Defendants were at all times aware of Plaintiff Massa's deteriorating memory and bouts of disorientation both before and after the September Mid-South Fair incident.

18. As a result of Plaintiff Massa's wandering away from her St. Peter Manor's group on September 28, 2004 at the Mid-South Fair, Plaintiff, Laura LaScola, met with the then manager of St. Peter Manor, Defendant, Caran Brown. It was decided that until further medical tests were performed to determine whether she had further deteriorated neurologically, Mrs. Massa would not be allowed to go on any further, unaccompanied field trips.

19. Subsequently, Plaintiff LaScola re-scheduled an appointment for Plaintiff Massa with her physician to undergo a series of medical tests and procedures to determine the extent of the neurological damage that was causing her deteriorating memory loss.

20. Thereafter, Defendant, Caran Brown, was replaced as manager of St. Peter's Manor by Defendant, Mike Chiozza, and Defendant, Teresa Schuman. Defendants Chiozza and Schuman were the acting managers in charge of residence care on December 13, 2004

21. Notwithstanding Norma Massa's deteriorating neurological condition and Defendants' knowledge thereof, she was allowed to go on an unaccompanied, St. Peter Manor sponsored, field trip to Fitzgerald's Casino-Tunica on December 13, 2004.

22. Defendant, Laura Glasper-Gaston, who operated the St. Peter Manor bus on December 13, 2004, also operated the St. Peter bus on September 28, 2004, when Plaintiff, Norma Massa, wandered away from the Mid-South Fair.

23. The December 13, 2004 St. Peter Manor sponsored field trip to Fitzgerald's Casino

4

was scheduled for approximately half of a day. At approximately 3:30 p.m., the departure time, Plaintiff, Norma Massa, did not board the St. Peter Manor bus to return to Memphis. However, the bus log sheet showed that she did board the bus.

24. The bus driver, Laura Glasper-Gaston, waited approximately 15-30 additional minutes, until 3:45 or 4:00 pm, before leaving the casino.

25. Although Fitzgerald's Casino personnel called out for Mrs. Massa over the casino intercom, Fitzgerald's Security was not notified of Norma Massa's disappearance until St. Peter notified Laura LaScola. LaScola then contacted Fitzgerald's Security at approximately 5:00 pm., while on her way to the casino from Memphis.

26. Upon information and belief, Fitzgerald's Security then notified Tunica County Sheriff's Department (hereinafter "TCSD"), who arrived at Fitzgerald's Casino approximately the same time as Plaintiff, Laura LaScola, who upon receiving notice of her mother's disappearance, immediately left her home in Memphis to drive to Tunica in hopes of locating her mother.

27. Plaintiff, Laura LaScola, was not notified of her mother's disappearance until after the St. Peter bus had left the casino and was well on its way back to Memphis.

28. Upon arriving at Fitzgerald's, Plaintiff, Laura LaScola, met with TCSD and Fitzgerald's personnel regarding the whereabouts of her mother on December 13, 2004, however, she was never located.

29. To date, Plaintiff, Norma Massa, has never been found. It is more probable than not that she is deceased.

30. At the time of her disappearance, Mrs. Massa was taking several medications. Most

5

notably, she was taking medicine to control her blood pressure in order to minimize the risk of another CVA. Since her disappearance, no prescriptions have been filed in her name; and without her medication it is more probable than not that she has suffered another CVA and perished.

31. Further, there is no evidence that Plaintiff Massa found shelter after she disappeared from the casino. The outside temperature was such that a person of her age, medical condition, and lack of cold weather clothing could not have survived.

32. Plaintiff, Laura LaScola, as an immediate and direct result of the loss of her mother, has suffered severe emotional distress and trauma, including but not limited to the following:

    a) immense grief and worry over the whereabouts of her mother;

    b) apprehension and fear over the fate of her mother;

    c) the tremendous void in her life created by her mother's absence;

    d) the longing to speak to her as they had done numerous times daily for the past several years; and

    e) the intense frustration brought about by the futile attempts by law enforcement and others to locate her.

33. In addition, Plaintiff, Laura LaScola, has incurred and continues to incur substantial expenses in attempting to find out what happen to her mother and where she might be located, including but not limited to:

    a) investigative fees;

    b) attorney fees;

    c) loss of income;

d) court costs;

e) numerous hours of her time pursuing leads that have come from individuals who have responded to media reports, advertisement or the web-site that was created in Norma Massa's name; and

f) potential payment of the posted ten thousand ($50,000.00) reward for anyone who determines Plaintiff Massa's whereabouts.

## IV. CAUSE OF ACTION

34. Plaintiff hereby incorporates in every sub-section herein by reference paragraphs 1-29 of this complaint as if recited therein verbatim.

### A. Negligence

35. Defendants owed a duty and responsibility to Plaintiff, Norma Massa, to act with reasonable, ordinary and prudent care while Plaintiff Massa, who was neurologically impaired, was in their custody, control and supervision and during the provision of services rendered by Defendants throughout the course of her residency at St. Peter Manor.

36. Defendants breached their duty to Plaintiffs to act with reasonable, ordinary and prudent care when they allowed Plaintiff Massa to go on an unaccompanied, St. Peter Manor sponsored, field trip to Fitzgerald's Casino-Tunica, when they knew or should have known, of Plaintiff, Norma Massa's, propensity to become disoriented and wander away from such field trips.

37. Defendants breached their duty of care to Plaintiffs by negligently failing to take adequate measures to prevent Plaintiff Massa from being in a situation where she could easily become injured, lost and disoriented, including but not limited to the following:

38. Defendants breached their duty of care to Plaintiffs by negligently failing to properly access her deteriorating condition when Defendants had knowledge of same.

39. Defendants breached their duty of care to Plaintiffs by negligently failing to disallow Plaintiff Massa to go on unaccompanied field trips until a proper diagnosis and prognosis had been obtained by medical care providers.

40. Defendants breached their duty of care to Plaintiffs by negligently failing to implement adequate and appropriate health care for Norma Massa in light of her deteriorating neurological condition.

41. Defendants breached their duty of care to Plaintiffs by negligently failing to determine that her residency status at St. Peter Manor was contra-indicated based upon her medical condition;

42. Defendants breached their duty of care to Plaintiffs by negligently failing to make an independent judgement that Plaintiff Massa required an "assisted living" environment based upon her medical condition; and

43. Defendants breached their duty of care to Plaintiffs by negligently failing to have a set standard of care of care, policy or protocol for reasonably handling residents similarly situated to Norma Massa in determining when retirement living is no longer medically appropriate and an "assisted living" facility is better equipped to handle such patients/residents.

44. The disappearance of Norma Massa and the damages Plaintiffs have suffered as set forth herein were the direct, proximate and foreseeable result of Defendants breach of duties owed to Plaintiffs as complained of herein.

### B. Negligent Infliction of Emotional Distress

45. A duty existed on the part of the above named defendants to act as ordinary, prudent and reasonable persons with knowledge of Plaintiff Massa's medical history, history of becoming disoriented and becoming lost.

46. Defendants breached their duty to Plaintiffs by failing to implement the reasonable and necessary procedures, policies, and protocols as set forth above, that would have prevented the harm complained of herein.

47. There was an obvious, foreseeable risk of injury to Plaintiff Massa at the time Defendants breached their duty to Plaintiffs.

48. Defendants' breach of the duty of care to act reasonably and prudently regarding Plaintiff Massa's care was the actual, proximate and foreseeable cause of Plaintiff LaScola's injuries as stated herein.

49. Plaintiff was present at the time of the events complained of herein as she had traveled to Tunica County upon learning of her mother's disappearance.

50. As a direct and proximate result of Defendants' conduct as described above, Plaintiff, Laura LaScola, has been caused to suffer the injuries complained of herein:

    a) severe emotional distress, past and future;

    b) deprivation of sleep, past, present and future;

    c) stress related physical illnesses;

    d) depression; and

    e) aggravation of pre-existing conditions.

conscious of a civilized society and demonstrate a conscious and reckless disregard for the health and safety of Plaintiff Massa and others similarly situated.

57. This breach of duty and outrageous and reckless conduct by all Defendants was the direct, proximate and foreseeable cause of the damages complained of herein.

### D. Negligent Supervision

58. Defendant, DMH, breached their duty to Plaintiffs by negligently and recklessly continuing to employ, Defendant, Laura Glasper-Gaston, when it knew or should have known, of her propensity to consciously, recklessly and negligently disregard the health and safety of their residents and the health and safety of Norma Massa, in particular.

59. Had Defendant, DMH, taken reasonable and appropriate measures to counsel, train and supervise Defendant Glasper-Gaston, the damages and injuries complained of herein to Plaintiffs, would not have occurred.

60. As a direct, proximate, and foreseeable cause of the breach of duties, acts, errors and omissions of Defendants, Plaintiff Massa has disappeared and is presumed deceased.

### E. Breach of Contract

61. Plaintiff, Norma Massa, entered into a lease agreement with Defendant, DMH d/b/a St. Peter Manor on or about December 26, 2000.

62. Implied in said lease is DMH's responsibility to be active in the proper care and supervision of its residents. Specifically, reserving the right to independently determine whether Plaintiff Massa was medically able to continue living at St. Peter

63. Defendants breached their implied and expressed contractual duties and conditions to Plaintiffs by failing to determine that Plaintiff Massa could no longer function adequately in the

St. Peter Manor environment due to her deteriorating neurological condition.

64. As a direct, proximate and foreseeable result of Defendants' breach of implied and expressed contractual obligations, Plaintiff suffered and continues to suffer the injuries and damages complained of herein.

### F. Negligence Per Se

65. Plaintiff, Norma Dale Massa, is an individual who comes within the purview of T.C.A. § 71-6-101 et seq.

66. Specifically, Plaintiff, Norma Dale Massa, is a disabled sixty-six (66) year old, suffering from the physical dysfunctions of dementia and memory loss brought on by a series of cerebral vascular accidents.

67. Defendant, DMH d/b/a St. Peter Manor, assumed the responsibility as "caretaker," pursuant to T.C.A. § 71-6-102 (5), of Norma Massa, by virtue of the original lease agreement with Ms. Massa on December 26, 2000, which established her residency at St. Peter Manor.

68. DMH also became the "caretaker" of Ms. Massa pursuant to T.C.A. § 76-1-102(5) by agreeing not to allow her to go on any unaccompanied field trips subsequent to her disappearance from the Mid-South Fair on or about September 28, 2004.

69. Defendants also assumed the position of "caretaker" to Norma Massa, pursuant to T.C.A. § 76-1-102 (5), by voluntarily allowing her to participate in the December 13, 2004 DMH sponsored field trip to Fitzgerald's Casino-Tunica despite their knowledge of her prior disappearance and declining neurological condition.

70. Defendants violated the provisions of T.C.A. § 76-101 et seq. by knowingly, intentionally, negligently and recklessly allowing Plaintiff Massa to go on an unaccompanied St.

Peter Manor sponsored field trip to Fitzgerald's Casino-Tunica when they knew or should have known that to do so placed Plaintiff Massa in imminent danger of irreparable, physical and mental harm.

71. The aforementioned acts, errors, omissions, negligence and gross negligence on the part of Defendants in their care and responsibility of Norma Massa violate T.C.A. § 76-1-101 et seq. and, as such, amount to negligence per se.

### V. DAMAGES

72. Plaintiff hereby incorporates by reference paragraphs 1-66 of this complaint as a recited verbatim herein.

73. As a direct, proximate and foreseeable result of the breaches of duty and contract, the acts, errors and omissions on the part of Defendants, Plaintiff, Norma Massa, suffered and continues to suffer substantial injuries and damages, including but not limited to, the following:

    a) the right to be free from abuse and neglect;

    b) the right to be treated with dignity and respect;

    c) pain and suffering; and

    d) other injuries and damages not yet assessed;

74. As a direct, proximate and foreseeable result of the breaches of duty and contract, the acts, errors and omissions on the part of Defendants, Plaintiff, Laura LaScola, suffered and continues to suffer substantial injuries and damages, including but not limited to, the following:

    a) loss of consortium with her mother;

    b) severe emotional distress, past, present and future;

    c) deprivation of sleep, past, present and future;

d) loss of income, past, present and future;

e) ongoing investigative fees;

f) advertising expenses associated with providing the public with information and images of her mother;

g) court costs and discretionary costs, which remain ongoing; and

h) damages and injuries not yet assessed.

## VI. PRAYER

Wherefore Premises Considered, Plaintiff, Laura LaScola, individually, and on behalf of Plaintiff, Norma Massa, as conservator of her affairs, pray that:

a) Judgement be awarded to Plaintiffs against Defendants to compensate them for Defendants' negligence and breach of contract as set forth herein, including but not limited to, compensatory damages provided by T.C.A. § 71-6-120 (d) in the amount of one (1) million dollars ($1,000,000.00);

b) Judgement be awarded to Plaintiffs against Defendant, DMH, for failing to properly train and supervise, Defendant, Laura Glasper-Gaston, in an amount to be determined reasonable by a jury;

c) Judgement be awarded against Defendant, DMH, for failing to implement reasonable measures, standards of care, policies, procedures or protocol to adequately protect Plaintiff Massa and those similarly situated in an amount a jury deems reasonable.

d) Judgement be awarded against all Defendants for punitive damages, including but not limited to, punitive damages provided by T.C.A. § 71-6-120 (e), in an

amount of three (3) million dollars ($3,000,000.00) for the reckless, grossly negligent and conscious disregard for the health and safety of Plaintiff Massa;

e) A jury be empaneled to hear this cause of action;

f) Reasonable attorney fees and costs, pursuant to T.C.A. § 76-6-120 (d).

g) Plaintiffs be allowed to freely amend this complaint upon the completion of investigation/discovery aspects of this case; and

h) Such other and further relief, both general and specific, including but not limited to, discretionary costs as Plaintiffs may be entitled.

Respectfully submitted,

_____
CRAIG V. MORTON (14969)
Attorney for Plaintiffs
200 Jefferson, Suite 725
Memphis, TN 38103
(901) 522-0050

### CERTIFICATE OF SERVICE

I do hereby certify that a true and exact copy of the foregoing has been served upon Stephen Crawley, Attorney for Defendants, 130 N. Court Avenue, Memphis, TN 38103 via U.S. Mail, facsimile and/or hand-delivery.

Dated this the ___10th___ day of November, 2005.

_____
Craig V. Morton

15