IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

LAURA LASCOLA, Individually, and
as Sole Heir and Next of Kin of
NORMA DALE MASSA, deceased,

    Plaintiff,

VS.                                                                       CAUSE NO. 2:06CV80-P-A

BARDEN MISSISSIPPI GAMING, LLC,
d/b/a FITZGERALD'S CASINO HOTEL-TUNICA;
TUNICA COUNTY MISSISSIPPI; et al.

    Defendants.

## PLAINTIFF'S DISCLOSURE OF EXPERT TESTIMONY

Plaintiff Laura LaScola makes the following disclosure of expert testimony, pursuant to Rule 26(a)(2). Plaintiff has not fully completed discovery or preparation for trial in this action, and these disclosures are based only on the information presently available to Plaintiff and are necessarily limited by the fact that neither depositions nor other discovery tools have been completed in this matter. As discovery is still being conducted in this case, Plaintiff's expert reserves the right to amend his opinions based upon any proof presented to him prior to trial.

<u>DISCLOSURE</u>

The following expert is expected to testify on behalf of the Plaintiff at trial:

    Fred Del Marva

    1.     Mr. Del Marva's opinions, the bases for his opinions, and the data used to



reach his opinion is contained in his signed written report dated June 18, 2007, a copy of which is attached to Exhibit A. Noting that there may be factual inaccuracies as the transcripts of the depositions heretofore taken are not completed by the court reporter. As such, Mr. Del Marva reserves the right to amend his opinion should same be required as he relied solely on his notes of the depositions themselves.

2. Exhibits used as a summary of or in support of Mr. Del Marva's opinions have not been made, however, Plaintiff respectfully requests that she be allowed to supplement her disclosure upon construction of said exhibits.

3. Mr. Del Marva's professional qualifications are listed in his Curriculum Vitae which is attached as Exhibit B. Mr. Del Marva has not authored any publications in the last ten years, however, all articles and publications are listed in his Curriculum Vitae.

4. Mr. Del Marva is being compensated at a rate of $250 per hour for his study and review of this matter, and $2,000 per day for court appearances and depositions.

5. A listing of any cases in which Mr. Del Marva has testified as an expert at trial or by deposition within the preceding four years is attached as Exhibit C.

Respectfully submitted,

MORTON & GERMANY, PLLC

Craig V. Morton (TN#14969)
45 North Third, Second Floor
Memphis, TN 38103
(901) 522-0050
(901) 522-0053

## CERTIFICATE OF SERVICE

I certify that I have mailed the foregoing *Plaintiff's Disclosure of Expert Testimony* serving the following parties:

Richard Underwood
UNDERWOOD AND THOMAS, P.C.
P.O. Box 171304
Memphis, TN 38187-1304

Terry Weill
UNDERWOOD AND THOMAS, P.C.
P.O. Box 171304
Memphis, TN 38187-1304

Andrew G. McCullough
MARKOW WALKER AND REEVES, P.A.
P.O. Box 13669
Jackson, MS 39269-3669

This the 5th day of July, 2007.

_____
Craig V. Morton

# FRED DEL MARVA, PI, PPO
*Forensic Investigations, Liability Consulting & Expert Witness Testimony*

---

*Premises Liability* • *Premises Security* • *Liquor Liability*
Hotels • Restaurants • Bars • Nightclubs • Casinos • Cruise Ships • Sports Complexes

## OPINIONS REPORT

### FRED DEL MARVA, PI, PPO

LaScola v. Barden Mississippi Gaming, d/b/a Fitzgerald's Casino Hotel Tunica MS.

June 18, 2007

You asked me to analyze the conduct of the above-captioned defendant with respect to the events of December 13, 2004. In particular, you asked me to examine and determine whether the defendant breached any standards of care that proximately caused or contributed to the demise of Norma Massa.

This report contains my preliminary opinions regarding how the defendant conducted business prior to and including the time of the incident; the defendant's actions and omissions on the date of the incident; whether their operational principles and methodologies were consistent with those of reasonable, diligent, and responsible owners/operators of similar establishments with regard to providing a safe and secure environment for their guests and invitees. And, whether the defendant's operational procedures, protocol, principles, methodologies, or omissions violated any applicable standard of care owed by the defendant to the public, including Norma Massa, and whether such was a proximate cause of the incident in question.

I am aware that discovery and investigation of the subject matter of this lawsuit has not been concluded. For this reason, I reserve the right to add to, amend, modify, or supplement the following opinions after I have had the opportunity to review the results of discovery and any other work that could form a basis for my final opinions.

My opinions [thus far] are based upon the information and documents provided by your office, surveillance videos provided by the defendant, deposition testimony of Domenic Mezzetta [hotel GM], deposition testimony of Marvin Greenleaf [director of surveillance], Danny Wood [director of security/risk management], Craig Magnum [River Park employee], John Russell [security truck driver], interviews and partial deposition of Laura LaScola, and a crime demographic of the location in question [at the time in question] for a three (3) and six (6) mile radius. My opinions will also be based on my June 12, 2007 inspection of the defendant's premises, my 27 years as a hospitality industry [hotels, restaurants, bars, casinos, cruise ship, sports complexes, etc.] consultant; my 20 years as a legal investigator, forensic investigator, legal consultant, and court qualified [federal and state] expert; my overall experience and involvement in over 600

---

*21666 North 58th Avenue • Arrowhead Lakes • Glendale, AZ 85308*
*Telephone: (623)-566-5300 — Fax: (623) 566-5354*
*E-mail: liabilityexpert@freddelmarva.com*


EXHIBIT A

cases involving premises liability, premises security and liquor liability issues; and my litigation experience in casinos such as, but not limited to, Hilton Hotel & Casinos (LV), Isle of Capri (LA), Casino Magic (MS), Sands (NJ, LV), Stardust (LV), OK Casino (NM), Bally's (LV), Golden Nugget (LV), Players (LA), Mirage Hotel (LV), San Remo (LV), Harrah's (LA, LV, KS), MGM (LV), Treasure Island (LV), Silver Star (MS), Splash (MS), Treasure Bay (LV), Jubilee Casino (MS), Grand Casino (LA, MS), Biloxi Belle Casino (MS), Mesquite Casino (LV), Golden Strike (MS) Casino Queen (IL), Fitzgerald's (MS, NV), Hollywood Casino (MS), Colorado Belle (NV), Rio Casino (LV), Vegas World (LV), Flamingo (LV), Caesars Palace (LV & AC), Trump Castle (AC), Resorts International (AC), Luxor (NV) and the Taj Mahal (AC).

In compliance with the applicable Federal Rules of Civil Procedure, attached are a current curriculum vitae, a fee schedule, and a list of cases in which testimony was given either at trial or deposition during the last four years.

## Summary of Findings

The following is a summary of the uncontroverted evidence for the purpose of providing a general overview of the events of the evening and is not intended as an exhaustive detailed rendition of all of the facts regarding the incident.

On December 13, 2004, Norma Massa was a guest and invitee of the defendant at the premises known as Fitzgerald's Hotel and Casino in Tunica Mississippi.

At Approximately 11:00 a.m. Ms. Massa and others in her group arrived by bus during a St. Peter Manor tour. The reason for Ms. Massa being on the bus was that she was a resident of St. Peters Manor and was suffering from a mentally disabling disease.

At approximately 12:26 p.m., Ms. Massa walked out the front entrance of the casino, walked in front of the hotel to the back parking lot, and walked into the restricted area in back of the hotel and casino. For approximately 25 to 30 minutes, Ms. Massa walked [in what could be considered a confused state] up, down, and around that area. All this time, Ms. Massa's movement form the time she entered the casino was memorialized on video tapes at the defendant's surveillance department.

While Ms. Mazza was in the back of the hotel, an employee hotel shuttle bus was driving in the same area where she was standing and walking around. Although Ms. Massa would have been clearly identified as someone who was confused, out of place, underdressed and in a location reserved for only venders and employees, the driver, rather than making an inquiry as to why Ms. Massa was there and trying to assist her, ignored her and drove away.

After the shuttle bus incidents, a security officer [John Russell] while driving a security truck entered the area where Ms. Massa was walking around in circles and standing in one spot for approximately 30 minutes. Rather than making an inquiry as to why Ms. Massa was there and trying to assist her, he too failed to intervene and drove off.

It is my belief, but not admitted to by Mr. Russell, that had he [if trained in any level of security] spoken to Ms. Massa, he would have identified her as being confused, lost and, more likely than not, a danger to herself.

Being ignored and not approached by the bus driver on three occasions and Mr. Russell at 12:34 p.m., Ms. Massa began to leave the property and walk in the opposite direction towards the River Park Museum. While in the parking lot of the River Park Museum, Mr. Russell again drove within a few feet of Ms. Massa and again passed her by. Mr. Russell's reason [from his deposition testimony] was that within the two to three seconds that it took him to drive by Ms. Massa, he made the observations that she was not drunk, was not old, had no mental problems, and therefore he had no reason to stop her even though it was freezing weather and she was improperly dressed for that type of weather, and she was in a parking lot with no vehicles in it.

Laura LaScola was informed of her mother's disappearance and arrived at Fitzgerald's at approximately 4:30 to 5:00 p.m. At that time the defendant adamantly refused to allow her to observe surveillance video which would have enabled her to track the movements and whereabouts of her mother and begin the search in the right direction. However, this was not done until some time later, making the search more difficult if not impossible. It was six (6) hours after Ms. Massa went missing that the hotel began searching. Unfortunately, Laura LaScola did not see her mother again until January 1, 2006, when the remains of Norma Massa were found in a field two miles from the casino.

## Conclusions

Premises owners, such as the one in question, are not the insurers or guarantors of their patrons' safety, but they have a obligation, responsibility and a duty to provide reasonable care. This defendant failed to create a safe and secure environment and failed to provide reasonable care.

People visiting this casino have a false since of security by thinking that their every move is being observed by a security guard or a surveillance camera. In actuality this casino has 480 cameras, 420 of those **are not** being monitored [real life] and only recorded. The majority of the few that are being watched [by two or three agents] are focused on the gaming tables, count rooms and cashier cages.

The other 420 cameras are only recording in the event an incident occurs. They would then have the ability to review the incident after the fact, such as in this case. At the time of this incident, 30 cameras were focused on the outside, **none** being watched to protect Ms. Massa.

In the deposition of Mr. Greenleaf [director of surveillance] he testified regarding the **inadequate** coverage of the back area where Ms. Massa was wandering around for 25 to thirty minutes, and also testified that after this incident he made adjustments to have more areas [especially blind spots] covered by cameras.

Mr. Greenleaf also testified that, *"with only three people and 16 monitors, it is impossible to watch 480 some odd cameras"*. If this creates a safety issue, which I think it does, perhaps patrons should be notified of the inadequacies of the surveillance department at Fitzgerald's and that only the gaming table are going to be watched.

If something happens to you while you are outside, Fitzgerald's will only know what happened after the incident when they review there surveillance tape; and if you are walking outside at night, you are on your own because the cameras are not able to function in the dark.

A big issue in this case is whether the search was conducted within a reasonable amount of time. The conclusion is that it **was not**, although Mr. Greenleaf testified *"that if he was informed, he could bring up the tapes immediately"*, unfortunately this did not happen and the search did not begin until, in my opinion, it was too late.

Mr. Greenleaf also testified that the addition of cameras after this incident *"was a decision because of potential problems"*. As a security expert, I classify potential problems as foreseeable problems, therefore making the Massa incident foreseeable.

The results of my crime demographic [CAP SCORE], indicate foreseeable criminal activities ranging from over seven (7) to over fourteen (14) times higher than the national average. This makes the area within a six (6) mile radius a potential and foreseeable hazard for assaults on patrons of Fitzgerald's. Mr. Greenleaf testified that he was aware of The CAP Score and *"never accessed it"* to determine its results. Had he obtained the results, and adjusted his surveillance positions and protocol, it is my opinion that, more likely than not, this incident would not have transpired.

Fitzgerald's differs in operational practices from large non-gaming hotels. The differences are its attraction to gamblers, consumers of large quantities of free alcohol, and criminal minded people.

Under these circumstances, management has to be extremely knowledgeable and qualified in all aspects regarding the operation of a hotel and casino. Although Domenic Mezzetta was a very pleasant gentleman, I do find fault in his total lack of experience and knowledge in the way his surveillance and security departments are operated, his not paying attention to the training given to security and surveillance employees and his acknowledgement that some of the bus groups may have people with mental problems. Even with his understanding of who the bus groups are comprised of, he failed to instruct, suggest or provide training in this area to staff members who would come in contact with these specific bus tours.

The day that Ms. Massa went missing, there was **only one** security guard assigned to patrol the entire property, that being Mr. Russell. Mr. Mezzetta testified that *"the typical problem with the security department in insufficient staff"*. I agree, and it is my opinion that the amount of security monitoring the safety of patrons outside the casino and hotel was grossly inadequate.

Although the foreseeability of criminal activities ranges from over seven (7) to over fourteen (14) times higher than the national average Mr. Mezzetta *"was not aware of crime in 2004 and never made inquiries"*.

This should have been a major concern of his and he should have implemented a level of security higher than the one that existed at the time of the incident.

While on the subject of security, there is testimony that the shuttle bus drivers [same as the ones who drove by Ms. Massa three times during a twenty five to thirty minute time span] are delegated security responsibilities to monitor the premises. There is **not one** shred of evidence with regard to any security training they received, or the kind of qualifications and experience they possessed to assume this responsibility, duty and task of securing the external premises and providing safety to patrons in those areas.

Based on my observations at Danny Wood's [director of security and risk management] deposition, I find him to be qualified and well experienced. However, working in the corporate structure can stifle and prevent one from doing what they think is right as opposed to what instruction they are given by corporate. I think this is the perfect scenario. As an example, Mr. Wood was *"unaware of surveillance blind spots"* because he had **no** control over surveillance.

Mr. Wood was **not** surprised about the CAP statistics, but **did nothing** to increase the level of security monitoring the outside of the premises.

Mr. Wood agrees that Ms. Massa's location, in that type of weather, *"should have been a concern"*; but **no one** did anything.

Mr. Wood testified that **if** someone either security [Mr. Russell] or the bus driver observed Ms. Massa in the back of the hotel, security dispatch and surveillance should have been notified; but **no one** did anything. As a matter of fact, Mr. Wood testified that if this was not done, it would be a company violation.

Mr. Wood confirms that the security truck driver [Mr. Russell], the only security officer in the outside area, was in noncompliance with company policy by frequently driving on the River Park property. It is my opinion that this noncompliance takes away from monitoring the safety of Fitzgerald's patrons, Ms. Massa included.

The deposition testimony of the security truck driver [John Russell] is extremely questionable and unbelievable. Prior to his deposition he adamantly denied driving the security vehicle as seen in the surveillance video. However, at the time of his deposition, he confirmed that it was him driving. He testified that in the surveillance tape, Ms. Massa was behind bushes, that in seconds he was able to determine that she was not old, not drunk, had no mental problems, and she knew where she was going, although she was waking around in circles for 25 to 30 minutes.

He denies frequently being on River Park property [a company violation], when Craig Mangum [River Park employee] testified that he talks to Russell every day. He passed Ms. Massa on two occasions in the freezing weather and [according to him] never made an attempt to see why this older person, improperly dressed for the weather, was in back of the hotel in a restricted area, and then was walking in a parking lot on the River Park property that had not one single car parked there. He even tried to deny that he passed by Ms. Massa the second time in the River Park parking lot.

Since Ms. Massa treating physician had diagnosed her as having dementia and short term memory loss and the plaintiff's medical expert diagnosed her with the onset of Alzheimer's, it is my opinion that her demeanor would have clearly identified her [to any employee of the casino who was adequately trained and observant] as being lost, bewildered, distraught and a danger to herself.

Documents provided by the defendant clearly identify training and concerns for frequent guests, high rollers, children, medical emergencies, physically handicapped, and animals, but are totally lacking in training and concern for specific groups that they solicit, and may have people suffering from a variety of mental disorders, such as the one suffered by Ms. Massa.

Taking into consideration the crime demographic surrounding of Fitzgerald's Hotel and Casino, Mr. Wood's knowledge of the crime in the surrounding area adjacent to the property, and the results of the autopsy [suspicious and undetermined] one cannot rule out that Ms. Massa's death could have been the result of a criminal act.

## OPINIONS

As fully outlined above, and in light of the totality of the circumstances, it is my opinion that the methodology, principles, procedures, and actions employed by the defendant, with regard to providing a safe and secure environment, providing adequate security, providing adequate external surveillance, providing adequate training and complying with industry standards of care were **not** consistent with those which would have been implemented by responsible, diligent, prudent, and reasonable operators given the same circumstances.

Based on my review and analyses of the circumstances and facts relevant to the incident in question, it is my opinion that the defendant [through their owners, servants, agents, representatives, and employees] failed to provide adequate training, failed to provide adequate security, failed to provide adequate surveillance, failed to identify Ms. Massa as being someone in need of care, and failed to begin the search for Ms. Massa within a reasonable amount of time.

It is my opinion that on the day of the incident, there existed indisputable circumstances, which created a reasonably foreseeable risk and that such risk, would have been reasonably anticipated by responsible and professional operators and their staff.

It is my opinion that the defendant indirectly and directly contributed to the proximate cause of Ms. Massa's death in the negligent operation of Fitzgerald's Hotel and Casino and, but for that conduct, Ms. Massa would not have died and suffered in the manner she did.

Far worse, the defendant's actions reflect a reckless, careless and conscious disregard for the health, safety, and well being of elderly, mentally and physically disabled patrons, who they [willfully, deliberately, intentionally and consciously] attract, lure, tempt, entice, persuade, and solicit for the purpose of losing money at their casino.

If called upon to testify at the time of trial, my opinions will reflect the aforementioned.

Signed on this 18th day of June, 2007 by _____

# CURRICULUM VITAE

Fred Del Marva, PI, PPO

Standard of Care Expert

Premises Liability, Premises Security and Liquor Liability

Legal Consultant and Testifying Expert

Hotels, Casinos, Bars, Restaurants, Sports Complex's, Cruise Ships, etc.

21666 North 58th Avenue
Arrowhead Lakes
Glendale, Arizona, 85308

Phone – 623-566-5300

Fax – 623 – 566-5354

E-Mail – liabilityexpert@freddelmarva.com



EXHIBIT B

Fred Del Marva is a court qualified expert specializing in cases of "Acts of Violence," "Slips/Trips and Falls," "Liquor Liability," and "Overall Industry Standards Compliance" in the lodging and foodservice industries. During litigation, his opinions are used to determine the foreseeability of malfeasance and adequacy of security. Since 1986, he has been retained in over 500 cases (plaintiff & defense) in 48 of the contiguous states: Hawaii, Alaska, Jamaica, Dominican Republic, Puerto Rico, Grand Cayman, Canada, Nova Scotia and Australia, and has been qualified in both state and federal courts.

His association with prominent law firms (Gerry Spence & Melvin Belli), his consulting as an expert in the Hilton Tailhook Case in Las Vegas, I Can't Believe It's Yogurt murders in Austin, Harris murder in Houston, Giant's Stadium's Verni v. Aramark [135 million dollar dram shop verdict], Yosemite murders in California and "The McDonald Murders" in Nova Scotia have led to his appearances as an industry expert on numerous national, syndicated, and local television/radio shows (e.g. "Geraldo," "The Reporters," etc.).

He is a licensed private investigator, forensic investigator, legal consultant, security consultant, security guard company owner and operator, expert witness and Chairman/CEO of Food and Beverage Investigations, Del Marva Investigative Group, Special Events Security, and Del Marva Corporation.

These companies are retained by the country's leading hotel and restaurant chains, and independent operators to perform a variety of surveys including "Safety & Security," "Quality Assurance," and "Foreseeability Planning for Liability Exposure". Properties are surveyed to determine whether they comply with corporate policies, procedures, and industry standards.

Mr. Del Marva is a lecturer, educator, and trainer. He is a nationally acclaimed industry expert and an acknowledged authority on standards of care, management training, guest security, responsible service of alcohol training and policy and procedure development and implementation for hotels, discos, bars, restaurants, sport complexes, race tracks, casinos, convention facilities, and cruise ships.

He is certified in Security Professional Training Techniques by the National Association of Investigative Specialists; a previously certified TIPS trainer for the responsible service of alcohol; a "Neutral Evaluator" for a California Bar Association (ADR); and a past member of a Drug and Alcohol Task Force. He served as an Executive Advisory Board Member at two distinguished colleges with Hotel & Restaurant Departments, and has been published in hospitality trade journals.

He has been in the hospitality industry for over 45 years. Twenty-five of those years as an employee, manager, 20 as an industry consultant, and 19 as a liability consultant and liability expert. Having owned and operated numerous businesses, the experiences he brings to his training programs, consulting and expert testimony are based on acceptable industry principles and methods needed to insure a safe and secure environment.

As part of his continuing efforts to educate, he conducts corporate and military club management training programs; lectures at colleges, universities, and hotel and restaurant associations in the United States and Canada. He discloses the mistakes and the successes he has encountered while dealing with the country's leading hotel and restaurant companies; and teaches attendees to develop proactive and reactive instincts that lead to the anticipation, recognition, and elimination of potential areas of liability.

Hilton Hotel & Casinos (LV), Isle of Capri (LA), Casino Magic (MS), Sands (NJ, LV), Stardust (LV), OK Casino (NM), Bally's (LV), Golden Nugget (LV), Players (LA), Mirage Hotel (LV), San Remo (LV), Harrah's (LA, LV, KS), MGM (LV), Treasure Island (LV), Silver Star (MS), Splash (MS), Treasure Bay (LV), Jubilee Casino (MS), Grand Casino (LA, MS), Biloxi Belle Casino (MS), Mesquite Casino (LV), Golden Strike (MS) Casino Queen (IL), Fitzgerald's (MS), Hollywood Casino (MS), Colorado Belle (NV), Rio Casino (LV), Vegas World (LV), Flamingo (LV), Caesar's Palace (LV & AC), Trump Castle (AC), Resorts International (AC), Luxor (NV) and the Taj Mahal (AC) are only some of the casino's where Mr. Del Marva has been retained to render expert opinions in plaintiff and defense litigation./

2

### 2006 – (Covert Investigations)
Arizona State licensed company specializing in civil and criminal sub-rosa investigations

### 1985 – PRESENT (Food and Beverage Investigations)

Owner of FBI, a California licensed investigative firm specializing in the food service and hospitality industries. Clients are bars, restaurants, hotels, casinos, sports complexes, convention centers, cruise ships, etc. The company provides spotting and shopping services, property safety surveys, quality assurance inspections, management training programs, security evaluations, beverage management training, and a variety of other industry related services. FBI is retained by its clients to insure that their property and staff are complying with and adhering to company policies, procedures, and industry standards.

### 1986 – 2006 (Del Marva Corporation) Present Changed to Fred Del Marva P.I., PPO

President of DMC, a hotel and leisure time industry consulting firm providing a variety of services specializing in Quality Assurance Surveys, Safety and Security Inspections, Risk Management Workshops, Policy & Procedure Development, and Foreseeability Planning for Liability Exposure. DMC also provides legal consultation, and as President, Fred Del Marva provides expert testimony for premises liability, premises security and liquor liability litigation.

### 1996 to Present (Special Events Security)

SES is a state licensed private patrol company providing security guard services, security guard training, security program development, policy and procedure development, security guard training manual development, and security consulting.

### 1986 – PRESENT (Del Marva Investigative Group)

DIG is state licensed private investigative firm providing general investigative services for a select group of attorneys in civil and criminal litigation. It also provides pre-employment screening and internal theft investigative services for the leisure time industry.

### 1980 – 1985 (Bottom Line Hospitality Consulting)

President/CEO, and Senior Consultant. Bottom Line provided a complete consulting service to hotels and restaurants specializing in management training (all levels), management/work manual development, departmental policy and procedure development, safety and security evaluations, and hiring and firing procedures.

### 1971 to 1986 & 1993

Owned (operated and managed) numerous bars, lounges, restaurants, discos, and catering facilities: Turf Club, Jockey Club and Club House - 1993; La Scala Restaurant #3 - 1980 to 1985; La Scala Restaurant #2 - 1978 to 1980; Silver Rose Saloon - 1979 to 1980; La Scala Restaurant #1 - 1976 to 1980; Stage Delicatessen & Theatre Lounge - 1974 to 1976; Eatcetera - 1971 to 1974.

### TELEVISION, RADIO & PRINT MEDIA (APPEARANCES & INTERVIEWS)

Geraldo Rivera Show --"Deadly Discos
The Reporters -- "Beware of Bouncers".
San Francisco Channel 2 Morning Talk and KSFO Talk Radio ("Hotel Security").
Wall Street Journal
Trade Publications
ABC News [drunk driving – Glenn Campbell incident]

3

## MAJOR SPEAKING ENGAGEMENTS

**Colleges & Universities**

University of San Francisco
Washington State University
Golden Gate University
Diablo Valley College
San Francisco City College
California Culinary Academy

**Major Hotel Corporations**

Holiday Inn Corporation
Aircoa Hotel Corporation

**Military**

Department of Navy

**Legal Associations**

Association of Trial Lawyers of America (Premises Security, Casino Security & Liquor Liability)

**State Restaurant & Hotel Associations**

Virginia Hotel & Restaurant Association (Richmond)
California Restaurant Association (Los Angeles)
Colorado Hotel & Restaurant Association (Denver)
American Hotel & Motel Association (New York)
Wyoming Hotel & Restaurant Association
State of Washington Restaurant Association (Seattle)
California Restaurant Association (Newport Beach)
Canadian Hotel & Restaurant Association (Toronto)
Wisconsin Hotel & Restaurant Association (Madison)
Missouri Hotel & Restaurant Association (St. Louis)
California Restaurant Association (Sacramento)
National Restaurant Association (Chicago)
New Jersey Restaurant Association (Kearny)
Texas Restaurant Association (Dallas)
Michigan Restaurant Association (Detroit)
California Hotel & Motel Association (Sacramento)
Florida Restaurant Association (Orlando)
Mississippi Restaurant Association (Jackson)
Ohio Hotel & Restaurant Association (Columbus)
Missouri Restaurant Association (1996 St. Louis)
Ohio Restaurant Association (1996)

**Security Associations**

American Society for Industrial Security (lodging security)

## LICENSES, PERMITS & CERTIFICATIONS

CA Licensed Private Investigator (Food & Beverage Investigations – 1986 to present)
CA Licensed Private Investigator (Del Marva Investigative Group – 1986 to present)
AZ Licensed Private Investigator (Del Marva Detective Agency – 1998 to 2001)
AZ Licensed Private Investigator (Covert Investigations – 2006 to present)
CA Licensed Security Guard (1986 to present)
CA Licensed Private Patrol Operator (Special Events Security – 1996 to present)
Certified TIPS Trainer (responsible service of alcohol) – 1994 to 1995
National Association of Investigative Service   (Security Professional Training Techniques)
832 P.C. – Use of Force, Arrest and Firearms
Use of Deadly Force
California Concealed Weapons Permit (1979 to 2003)
Arizona Concealed Weapons Permit (2001 to present)

## PROFESSIONAL MEMBERSHIPS AND AFFILIATIONS PAST AND PRESENT

Former Neutral Evaluator (Alternative Dispute Resolution Section) Marin County Bar Association
Commissioner, Novato Drug and Alcohol Commission
Chairman of the selection committee for the Hotel/Restaurant Department San Francisco City College
Executive Advisory Board Member (Hotel/Restaurant Department) SF City College
Advisory Board Member (Hotel/Restaurant Department) Diablo Valley College
National Association of Legal Investigators (NALI)
Registered Consultant – Resolution Trust Corporation (RTC)
National Forensic Center
TASA Technical Advisor for Attorneys
National Expert Resources
DRI
American Trial Lawyers Association (ATLA Exchange)
California Trial Lawyers Association (CTLA Data Base)
Legal Research Network
Leisure Time Industries Litigation Consultants Exchange
National Restaurant Association
American Society for Industrial Security
California Association of Licensed Investigators (CALI)

## EDUCATION

Northern California Criminal Justice Training and Educational System
    (Santa Rosa Junior College – 1977) Use of Force, Arrest & Firearms
Northern California Criminal Justice Training and Educational System
    (Santa Rosa Junior College – 1987) Use of Force, Arrest & Firearms
Anheuser-Busch (Health Educational Foundation) TIPS Program
    "Training for the Intervention Procedures by Servers of Alcohol"
ATLA, College of Advocacy Seminar (Premises Liability & Premises Security)
ASIS, American Society for Industrial Security (Lodging Security Workshop)
National Rifle Association/AZ Dept. of Public Safety – Use of Deadly Force

## ARTICLES & PUBLICATIONS

Pay Now or Pay Later; Preventing Liability Suits
Implementing Controls; the Secret to Success
Employee Theft, Drug Abuse Should Put Restaurateurs on Guard Theft;
The Skeleton in the Food-Service Industry's Closet

5

# FRED DEL MARVA, PI, PPO

## TESTIMONY AT DEPOSITION (Last Four Years)

| #   | Date     | Case                        | Court   | Location         | Status  |
|-----|----------|-----------------------------|---------|------------------|---------|
| 1.  | 02/11/99 | Rivera v Taco Bell          | Federal | Waukegan, IL     | Deposed |
| 2.  | 02/21/99 | Swanson v Marriott          | State   | Chicago, IL      | Deposed |
| 3.  | 02/25/99 | Jones v Harrah's            | Federal | Shreveport, LA   | Deposed |
| 4.  | 03/11/99 | Wentel v Tavern Lounge      | State   | Casper, WY       | Deposed |
| 5.  | 04/06/99 | Santana v Marriott          | State   | Santa Ana, CA    | Deposed |
| 6.  | 04/23/99 | Negron v NOE Bar            | State   | Chicago, IL      | Deposed |
| 7.  | 06/04/99 | Banuette v Daily Planet     | State   | San Diego, CA    | Deposed |
| 8.  | 07/20/99 | Neville v Embassy Suite     | State   | Kansas City, MO  | Deposed |
| 9.  | 08/19/99 | Bennett v Casino Queen      | State   | St. Louis, MO    | Deposed |
| 10. | 08/23/99 | Duenez v FFP, Nu-Way        | State   | Victoria, TX     | Deposed |
| 11. | 09/24/99 | Cobb v Elks Club            | State   | Los Angeles, CA  | Deposed |
| 12. | 10/04/99 | Adona v Spikes Bar          | State   | Bakersfield, CA  | Deposed |
| 13. | 10/14/99 | Gibbs v Biloxi Belle Casino | State   | Biloxi, MS       | Deposed |
| 14. | 10/02/99 | Vidas v Waterfront Bar      | State   | Covington, KY    | Deposed |
| 15. | 10/06/99 | Godfrey v Waldo's Bar       | State   | New Orleans, LA  | Deposed |
| 16. | 12/14/99 | Cox v Splash Casino         | State   | Tunica, MS       | Deposed |
| 17. | 01/19/00 | Sturm v Slippery Noodle     | State   | Indianapolis, IN | Deposed |
| 18. | 02/07/00 | Valdivia v Hollywood Hotel  | State   | LA, CA           | Deposed |
| 19. | 02/21/00 | Delatorre v Almond Tree     | State   | Modesto, CA      | Deposed |
| 20. | 04/20/00 | Seale v Club Diversity      | State   | Washington, DC   | Deposed |
| 21. | 05/15/00 | Silva v Red Lobster         | State   | Visalia, CA      | Deposed |
| 22. | 06/14/00 | Rhodes v Capital Oyster     | State   | Montgomery, AL   | Deposed |
| 23. | 06/21/00 | Demerast v Decatur Club     | State   | Las Vegas, NV    | Deposed |



EXHIBIT C

| | | | | |
|---|---|---|---|---|
| 24. 08/02/00 | Gomer v Silver Legacy | State | Reno, NV | Deposed |
| 25. 08/16/00 | Moore v Sheraton Hotel | State | Seattle, WA | Deposed |
| 26. 09/31/00 | Medlin v Mesquite Casino | State | Las Vegas, NV | Deposed |
| 27. 0/17/00 | Medlin v Mesquite Casino | State | Las Vegas, NV | Deposed |
| 28. 12/07/00 | Barca v Village Greens | State | Sacramento, CA | Deposed |
| 29. 12/27/00 | Chambers v Skylark Bar | State | Bakersfield, CA | Deposed |
| 30. 01/23/01 | Stuart v Players Casino | Sate | Lake Charles, MS | Deposed |
| 31. 02/03/01 | Lindo/Smith v Orsini's Bar | State | LA, CA | Deposed |
| 32. 02/15/01 | Britton v Red Fox Bar | State | San Louis Obispo | Deposed |
| 33. 05/02/01 | Lenzora v Applebee's | State | Sacramento, CA | Deposed |
| 34. 05/15/01 | Minall v SLUSD | State | Oakland, CA | Deposed |
| 35. 06/12/01 | Musa v Brewsters | State | New Jersey | Deposed |
| 36. 07/06/01 | Wood v Masses | State | Oakland, CA | Deposed |
| 37. 07/09/01 | Alaniz v HOJO, et al | State | Galveston, TX | Deposed |
| 38. 08/21/01 | Delsignore v Hightops | State | Chicago, Il | Deposed |
| 39. 08/24/01 | Palmer/Devito v Tavern | State | Freehold, NJ | Deposed |
| 40. 11/01/01 | Montez v Club Liquid | State | McAllen, TX | Deposed |
| 41. 11/19/01 | Turcotte v Sigma Chi, et al | State | Jackson, MS | Deposed |
| 42. 12/14/01 | Clayborn v Bistro 880 | State | La, CA | Deposed |
| 43. 12.17/01 | Ayes v TGIF/Logan's | Federal | Paducah, KY | Deposed |
| 44. 01/09/02 | Kerl v Arby's | State | Monona, WI | Deposed |
| 45. 02/19/02 | Lopez v Club 54 | State | McAllen, TX | Deposed |
| 46. 02/25/02 | Fox v Resorts International | State | Atlantic City, NJ | Deposed |
| 47. 04/12/02 | Sigler v Shell Station | State | Walnut Creek, CA | Deposed |
| 48. 04/22/02 | Ling v Sears Point | State | San Francisco, CA | Deposed |

| # | Date | Case | Court | Location | Type |
|---|------|------|-------|----------|------|
| 49. | 07/08/02 | McCallister v Floating R | State | Charleston, WV | Deposed |
| 50. | 09/02/02 | Ramirez v Fifth Club | State | Austin, Texas | Deposed |
| 51. | 09/16/02 | Stone v Long Bar | State | Monterey, CA | Deposed |
| 52. | 10/24/02 | Dick v Steiner's | State | San Raphael, CA | Deposed |
| 53. | 11/12/02 | McCullough v Mid-America | Federal | Memphis, TN | Deposed |
| 54. | 01/17/03 | Noli v Chester Drawers | State | Orange, CA | Arbitration |
| 55. | 02/28/03 | Ricardo v Normandie Club | State | LA, CA | Deposition |
| 56. | 03/23/03 | Faust v Moose Lodge | Federal | Bellingham, WA | Deposition |
| 57. | 04/23/03 | Arrington v Sands Casino | State | Atlantic City, NJ | Deposition |
| 58. | 06/11/03 | Swan v Valley Plaza Mall | State | Bakersfield, CA | Deposition |
| 59. | 07/17/03 | Manley v Johnny Foxx's | State | Los Angeles, CA | Deposition |
| 60. | 09/17/03 | Bonkowsky v Surf Motel | State | Pismo Beach, CA | Deposition |
| 61. | 09/29/03 | Plancencia v Club Sauvé | State | Modesto, CA | Deposition |
| 62. | 10/10/03 | Mata v Mata | State | Santa Rosa, CA | Deposition |
| 63. | 11/03/03 | Susman v Tri-State Track | Federal | Charleston, WV | Deposition |
| 64. | 11/12/03 | Bush v Hamilton Ranch | Federal | Littlefield, AZ | Deposition |
| 65. | 12/04/03 | Whitman v Maple Drive | State | Beverly Hill, CA | Deposition |
| 66. | 01/19/04 | Jackson v Penn Gaming | State | Charles Town, WV | Deposition |
| 67. | 02/18/04 | Cozzitoto v Discovery Joe's | State | Discovery Bay, CA | Deposition |
| 68. | 03/18/04 | Raley v Peppermill | State | Burlingame, CA | Deposition |
| 69. | 04/29/04 | Pixley v Wigwam et al. | State | Cheyenne, WY | Deposition |
| 70. | 07/28/04 | Keaton v Gordon Biersch | State | Columbus, OH | Deposition |
| 71. | 08/03/04 | Parks v Chili's | State | Aurburn, ALA | Deposition |
| 72. | 08/14/04 | Monk v Kodiak Jack's | State | Petaluma, CA | Deposition |
| 73. | 08/17/04 | Crow v SW Convenience | State | St Angelo, TX | Deposition |
| 74. | 10/05/04 | Lewis v Hollywood Casino | State | Tunica, MS | Deposition |

| # | Date | Case | Court | Location | Type |
|---|---|---|---|---|---|
| 75. | 10/21/04 | Marguia v Doc Ryan's | State | Chicago, IL | Deposition |
| 76. | 10/28/04 | Verni v Aramark/Giants | State | Secaucus, NJ | Deposition |
| 77. | 11/05/04 | Ritter v Supercuts | State | Phoenix, AZ | Deposition |
| 78. | 11/28/04 | McGowen v Marriott | State | Oklahoma City, OK | Deposition |
| 79. | 01/07/05 | Butcher v. Town Pump | State | Billings, Montana | Deposition |
| 80. | 02/23/05 | Foradori v. Captain D's | Federal | Tupelo, MS | Deposition |
| 81. | 06/01/05 | Taylor v. Caesar's Palace | State | Atlantic City, NJ | Deposition |
| 82. | 07/07/05 | Xie v. New Station Rest. | State | Sacramento, CA | Deposition |
| 83. | 08/12/05 | Brinkmeyer v. Grand Casino | State | Cincinnati, Ohio | Deposition |
| 84. | 08/24/05 | Pieper v. Microtel Inn | State | Brookfield, WI | Deposition |
| 85. | 09/08/05 | Woods v. TGI Friday's | State | Los Angeles, CA | Deposition |
| 86. | 09/13/05 | Peterson v. Ground Round | State | Warwick, RI | Deposition |
| 87. | 10/14/05 | Vaughn v. Harrah's [NV] | State | Las Vegas, NV | Deposition |
| 88. | 11/15/05 | Lisobee v. Southern Exposure | State | Salt Lake, UT | Deposition |
| 89. | 12/09/05 | Shadday v. Omni Hotel [DC] | State | Washington, DC | Deposition |
| 90. | 03/20/06 | Burton v. Caymus Inn | State | Napa, CA | Deposition |
| 91. | 04/14/06 | Chamberlain v. Motel 8 | State | Newport Beach, CA | Deposition |
| 92. | 04/19/06 | Devries v. State of AZ | State | Phoenix, AZ | Deposition |
| 93. | 05/1/06 | Ross v Valley Apartments | State | Memphis, TN | Deposition |
| 94. | 06/21/06 | Murfitt v. Papa Joes | State | Anchorage, AK | Deposition |
| 95. | 07/19/06 | Caurth v Outer Limits | State | Nashville, TN | Deposition |
| 96. | 09/18/06 | Sauceda v Louie's Backyard | State | San Padre, TX | Deposition |
| 97. | 10/18/06 | Underwood v Mission Rock | State | SF, CA | Deposition |
| 98. | 10/22/06 | Sells v Outlaw Saloon | State | Cheyenne, WY | Deposition |
| 99. | 04/18/07 | Guy v. Wild Buffalo Wings | State | Jackson, MS | Deposition |
| 100. | 05/14/07 | Jones v. Piggs Pub | State | Orville, CA | Deposition |

## TESTIMONY AT TRIAL (Last Four Years)

1. 04/12/02 Sigler v Shell Station — State — Walnut Creek, CA — Trial
2. 09/16/02 Stone v Long Bar — State — Monterey, CA — Trial
3. 07/10/03 Ricardo v Normandy Club — State — Los Angeles, CA — Trial
4. 09/02/03 Manley v Johnny Foxx's — State — Santa Monica, CA — Trial
5. 01/22/04 Clayborn v Bistro 880 — State — Compton, CA — Trial
6. 12/10/04 Verni v Aramark/Giants — State — Hackensack, NJ — Trial
7. 12/15/04 Springer v DJ's — State — Lake George, NY — Trial
8. 10/25/05 Maguiau v. Doc Ryan's — State — Chicago, IL — Trial
9. 03/08/06 Wilson v. High Steaks Casino — State — Billings, MT — Trial
10. 05/04/06 Chamberlain v. Super 8 — State — LA, CA — Trial
11. 10/13/06 Murfitt v. PJ's — State — Anchorage, AK — Trial
12. 10/20/06 DeVries v State of AZ — State — Phoenix, AZ — Trial
13. 11/28/06 Borton v. Caymus Inn — State — Napa, CA — Trial
14. 02/08/07 Sells v. Out Law Saloon — State — Cheyenne, WY — Trial
15. 04/12/07 Blackstone v. Piecere — State — Palo Alto, CA — Trial
16.